UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

Martha Menchaca, M.D., Ph.D.,

    Plaintiff,

-vs-

Erik K. Shinseki, Secretary, Department of Veterans Affairs,

    Defendant.

Case No.

Jury Trial Demanded

---

## VERIFIED COMPLAINT
## PRELIMINARY INJUNCTIVE RELIEF SOUGHT

---

The Plaintiff, by her counsel, Peter Earle, Law Office of Peter Earle, LLC, states her claims against Defendant as follows:

### INTRODUCTION

1. This action is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"), seeking to redress unlawful and discriminatory employment practices and retaliation and to remedy the Defendant's continuing interference with the rights of the Plaintiff.

### JURISDICTION AND VENUE

2. The Court has jurisdiction of this Complaint under Title VII.

3. The Plaintiff Martha Menchaca, M.D., Ph.D., filed a timely informal agency complaint of discrimination with the Department of Veterans Affairs on July 22, 2008. The Plaintiff

1

received notification on September 25, 2008, that the informal processing period was concluded.

4. The Plaintiff filed a formal complaint of discrimination with the Department of Veterans Affairs on October 7, 2008, alleging gender, age, race and national origin discrimination with regard to scheduling of radiologists at the Zablocki VAMC, as well as unlawful retaliation.

5. The Plaintiff was issued a notification of acceptance of her formal complaint for investigation on October 19, 2008, stating that she could file a civil suit in federal court if no final determination was made concerning her claims within 180 days of October 7, 2008.

6. On July 16, 2009, the Plaintiff filed a second complaint with the Department of Veterans Affairs alleging additional and continuing acts of retaliation arising from the protected oppositional conduct alleged in and associated with the complaint referred to in paragraphs 4 and 5 above.

7. On September 29, 2009, the Equal Employment Opportunity Commission Administrative Judge presiding over the initial formal complaint issued an Order directing the Agency's Office of Resolution Management to expedite the processing of the second complaint. The investigation of the second complaint was completed on December 9, 2009

8. On December 2, 2009, the two complaints were ordered consolidated pursuant to 29 C.F.R. § 1614.606. No final determination was or has been made on any of her claims, and none within 180 days of October 7, 2008.

9. Venue is proper in the Eastern District of Wisconsin because the actions complained of occurred in this District.

## PARTIES

10. The Plaintiff is a citizen of the State of Wisconsin. She is protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.,* from discrimination and retaliation by the U.S. Department of Veterans Affairs.

11. The Defendant Erik K. Shinseki is the Secretary of the Department of Veterans Affairs, an agency of the federal government, hereinafter the "Agency."

## BACKGROUD FACTS

12. The Plaintiff is a physician who graduated from medical school at the University of Illinois at Chicago in May of 2000. She completed her residency in radiology at Cook County Hospital in Chicago, Illinois in 2005. In 2006, the Plaintiff completed a fellowship in Onco-Radiology at Brigham and Women's Hospital and the Dana Farber Institute in Boston, Massachusetts. Between 2006 and 2007, the Plaintiff served as an MRI Fellow and Instructor of Imaging Sciences at the University of Rochester in Rochester, New York. In June of 1999, while attending medical school, the Plaintiff also received a PhD in public health from the University of Illinois at Chicago. She is licensed to practice medicine in Illinois, Massachusetts, and New York.

13. On September 17, 2007, the Plaintiff was hired by the Agency as a staff radiologist at the Zablocki VAMC located in Milwaukee, Wisconsin. She was hired by Dr. Agarahara AG Bharatkumar pursuant to 38 U.S.C. §7401(1). Dr. Bharatkumar considered the Plaintiff's credentials and training to be "impeccable" and characterized her professionl achievement as a "shining star."

14. On January 31, 2008, after almost six months, the Plaintiff's direct supervisor, Dr.

3

Bharatkumar, evaluated the Plaintiff's overall performance as "excellent to above average" and indicated that her training has progressed "slightly faster than normal." Dr. Bharatkumar rated the Plaintiff's work output as "excellent" and her work quality as 'excellent to above average." He also rated the Plaintiff's cooperativeness and attitude as "above average" and her attendance as "satisfactory."

15. During the month of June of 2008, the Plaintiff made multiple complaints to Dr. Bharatkumar's administrative assistant indicating that she believed the scheduling of radiologists was inequitable and discriminatory and requested that the scheduling be made more equitable.

16. On July 17, 2008, the Plaintiff informed Dr. Bharatkumar that if he did not remedy the the discriminatory manner by which radiologists were scheduled, she would file a complaint with the Agency's EEO Office.

17. On July 22, 2008, the Plaintiff complained to Charles Wallace, an Agency EEO Officer, that Dr. Bharatkumar was scheduling the radiologists in a discriminatory manner.

18. The Plaintiff's complaints about discriminatory scheduling of radiologists constituted protected oppositional and participatory conduct under Title VII.

19. On August 7, 2008, informed Dr. Bharatkumar that she had filed an EEO complaint and that she expected the scheduling of radiologists to be made more equitable and Dr. Bharatkumar immediately responded by stating *"Alright. Also we need to discuss your peer reviews."*

20. On August 11, 2008, the Plaintiff sent Dr. Bharatkumar an e-mail stating: *"I will also be responding next week, after counseling, regarding the inequitability in the schedule and my request to remediate this having been met by your saying something about peer review,*

4

*which has nothing to do with equitability in the schedule."*

21. Also on August 11, 2008, Dr. Bharatkumar sent the Plaintiff an e-mail declaring that he will be providing *"considerable evidence to refute her allegation of discrimination."* The e-mail goes on to assert that *"different types of peer review, the scope of which have been constantly increasing and getting more stringent"* and that *"anytime there is a concern about a provider's competence a peer review will be carried out."*

22. On August 12, 2008, Dr. Bharatkumar requested and received an e-mail from Jeff Schickowski providing a list of PET/CT reports prepared by the Plaintiff.

23. On August 14, 2008, Dr. Bharatkumar sent an e-mail to Dr. Jerome Van Ruiswyk, James Bernet, and Kay Schwieger requesting the initiation of a "non-confidential administrative review of Dr. Martha Menchaca's competence.

24. On August 14, 2008, Kay Schwieger responded to Dr. Bharatkumar's request with an e-mail stating: *"A non-confidential administrative review would be used to review the various complaints and concerns that have arisen since her probationary period began. If we believe that we have enough clear documentation now without doing an administrative review, we could go forward and request that the Physician Professional Standards Board convene a summary review of her probationary service. This summary review should include all identified concerns with performance and conduct that have arisen since 10-14-07. However, if we need to do an administrative review to determine whether or not the concerns and complaints are valid, that should be done before we go ahead with the request for the summary review by the Board."* Copies of the e-mail were sent to James Bernet and Dr. Van Ruiswyk.

5

25. On August 18, 2008, Dr. Bharatkumar again requested a "non-protected peer review" of the Plaintiff.

26. After the Plaintiff complained to the Agency EEO office regarding the allegations of discriminatory scheduling, Dr. Bharatkumar began to review and select patients in whose care the Plaintiff participated in an effort to discover documentation for the non-protected peer review and also selected the "*non-involved radiologists*" to participate in the review.

27. The Agency's policies and procedures allow for two types of "peer reviews." The first is known as a "protected peer review for quality management" which is conducted pursuant to 38 U.S.C. § 5705 and the Zablocki VMAC Professional Services Memorandum No. V-7. The objective of this type of peer review is to "examine individual provider decisions and identify opportunities for improvement in clinical practice, patient safety, and the effective use of resources." Policy No. V-7 further provides that "peer reviews for quality improvement are to be conducted in a non-punitive manner and cannot be used to take personnel actions such as reassignment, changes in privileges and demotions." The policy also sets forth the procedure for initiating protected peer reviews which requires that requests for peer reviews be submitted to the Chief of Staff (COS) who chairs the Medical Center Peer Review Committee. The essential elements of a protected peer review include the evaluation of the care provided by individual clinicians when the care provided is of concern, determination of the necessity of specific actions recommended by the peer review process and confidential communication back to appropriate providers regarding the results and any recommended actions to improve performance.

28. The second type of peer review pursuant to Agency Policy No. V-7 is referred to as a "non-

protected peer review." A "non-protected peer review" is conducted to assess competence for the purpose considering an adverse privileging action.

29. After August 7, 2008, Dr. Bharatkumar removed the Plaintiff from the "on-call" list of radiologists under his supervision. This adverse action was taken without justification.

30. On August 14, 2008, Dr. Bharatkumar, in correspondence with Dr. Jerome Van Ruiswyk, undertook to restrict the Plaintiff's supervision of residents from the Medical College of Wisconsin. Prior to the commencement of her employment with the Agency, Dr. Bharartkumar had required that the Plaintiff meet with Dr. James Youker and Dr. Guillermo Carrera at the Medical College of Wisconsin because the Plaintiff would be supervising residents in the course of her employment with the Agency. The Plaintiff supervised residents from September 17, 2007, until mid August of 2008.

31. On August 15, 2008, Dr. Bharatkumar removed the Plaintiff from cross-sectional imaging at Zablocki VAMC thereby restricting the types of cases that the Plaintiff was allowed to interpret.

32. On or about September 5, 2008, Dr. Bharatkumar evaluated the Plaintiff's performance as unsatisfactory in all categories and included various narratives containing false and exaggerated criticisms of her competence and conduct. Dr. Bharatkumar justified, in part, the unsatisfactory conduct allegations with an accusation that the Plaintiff "*assembled a concerted meeting of the CT and MRI technologists, behind closed doors, during working hours*" to discuss potentially discriminatory conduct by Dr. Bharatkumar.

33. The Plaintiff was not provided with a copy of the September 5, 2008, performance evaluation in violation of Agency procedures and Dr. Bharatkumar made no effort to meet with the

7

Plaintiff for the purpose of conducting the evaluation, as is the normal procedure for such evaluations. Dr. Bharatkumar's retaliatory animus is explicitly evident in the narrative he included in the September 5, 2008, performance evaluation.

34. The Plaintiff participated in the regularly scheduled thoracic tumor conference and other conferences between September 25, 2007, and August 28, 2008, and was removed from further participation by Dr. Bharatkumar on September 15, 2008. There existed no legitimate non-retaliatory justification for removing the Plaintiff from conference participation

35. On September 19, 2008, Dr. Mehmet Kocek, Dr. Mitchell Sandler, Dr. Alfredo Ignacio, and Dr. Hossam Hamda, all radiologists employed by the Defendant who worked with the Plaintiff at the Zablocki VAMC and who had the opportunity to observe the Plaintiff's day to day work performance for approximately one year signed letters indicating that the Plaintiff was *"cooperative within the workplace"* and *"her work to be average and satisfactory when compared to other radiologists with her training."*

36. During September of 2008, the Plaintiff began to receive counseling and treatment for stress, anxiety and depression caused by Dr. Bharatkumar's retaliatory actions from Dr. Cheryl Kinsman of the Defendants EAP office on a biweekly basis until February of 2009.

37. On February 6, 2009, Dr. Bharatkumar conducted a staff meeting of radiologists. During this staff meeting, another staff radiologist, speaking on behalf of the Plaintiff's colleagues requested that the Plaintiff be placed back on the call schedule as well as the conference schedule. The Plaintiff then asked Dr. Bharatkumar to at least inform her of why she had been taken off of the call schedule and why he had imposed the other restrictions on her. Dr. Bharatkumar refused to acknowledge the presence of the Plaintiff or respond to her question

and spoke about her in the third person as if she were not present. Dr. Bharatkumar's mistreatment of the Plaintiff during the February 6, 2009, staff meeting further aggravated the mental health injury caused by Dr. Bharatkumar's retaliatory treatment.

38. On February 16, 2009, the Plaintiff sought psychiatric treatment for her work related stress health injuries from Dr. Walter T. Davison.

39. At all times material to the allegations in this complaint, the Plaintiff's work performance was satisfactory and her conduct was appropriate and professional.

40. At all times material to the allegations in this complaint, the Plaintiff satisfied the legitimate employment related expectations of the Defendant.

41. The Plaintiff was not informed of the "non-protected peer review" nor of the "administrative review" and was not provided with any opportunity to respond to any questions regarding medical decisions she made or conduct she was alleged to have participated in.

42. On or about February 27, 2009, the "non-protected peer review" of selected patients treated by the Plaintiff was conducted by Dr. Sudakoff, Dr. Hellman, and Dr. Ericksonm, without the Plaintiff's knowledge or participation.

43. On or about April 9, 2009, Dr. Bharatkumar requested a summary review of the Plaintiff by the Professional Standards Board. The request was based on false and exaggerated written competence and conduct allegations as well as the results of the secret "non-protected review.

44. Between January 31, 2008, the date Dr. Bharatkumar signed the excellent to above average performance evaluation, and August 7, 2008, Dr. Bharatkumar never initiated the Zablocki procedures referred to in Paragraph 27 above in order to conduct a protected peer review of

9

any patient treated by the Plaintiff and the Defendant has no documents in its possession that indicate such a process was ever initiated.

45. On or about April 29, 2009, the Plaintiff requested a medical leave as a result of work related stress arising from the cumulative effects of the on-going reprisals and retaliatory acts that Dr. Bharatkumar began to carry out after the Plaintiff engaged in protected oppositional conduct in July and August of 2008. The request for medical leave was supported by the medical opinion of the Plaintiff's treating physician, Dr. Walter T. Davision. Dr. Davison indicated in writing that the Plaintiff was to be on medical leave until at least July 20, 2009.

46. On April 30, 2009, Dr. Bharatkumar completed all of the Plaintiff's paperwork to approve the medical leave. Nevertheless, on May 5, 2009, Dr. Bharatkumar sought to have the Plaintiff declared absent without leave.

47. On or about June 3, 2009, the Plaintiff was served with a Notice of a Summary Review by the Agency's Professional Standards Board to be held on June 17, 2009. This was the first time that the Plaintiff became aware that the non-protected peer review had been conducted.

48. On or about June 8, 2009, the Plaintiff served a letter on Dr. Van Ruiswyk requesting that the Professional Standards Board summary review be rescheduled due to her medical unavailability. The Agency was provided with a written documentation of the request by the Plaintiff's treating physician.

49. On June 10, 2009, Dr. Van Ruiswyk sent a letter to the Plaintiff informing her that notwithstanding her medical unavailability, the Agency would not reschedule the Professional Standards Board summary review.

50. On June 17, 2009, the Agency conducted a summary review of the Plaintiff's competence

10

Case 2:10-cv-00007-RTR    Filed 01/06/10    Page 10 of 13    Document 1

and conduct by the Professional Standards Board despite the Plaintiff's medical unavailability. The Professional Standards Board adopted the false and exaggerated conduct allegations of Dr. Bharatkumar as well as the findings of the "non-protected peer review and recommended that the Plaintiff be terminated from her position as a radiologist with the Agency.

51. On August 3, 2009, Dr. Bharatkumar sent a letter to the Plaintiff informing her that her employment was to be terminated effective August 21, 2009.

52. On January 6, 2010, the Agency has scheduled a hearing for the purpose of revoking the privileges of the Plaintiff and for the purpose of implementing the VA policy requiring the notification of the adverse actions to the NPDB and various state physician licensing baords.

53. The Plaintiff was not provided with copies of the radiological images upon which the non-protected peer review was based until January 4, 2010, almost ten months after the secret non-protected peer review and six months after the Professional Standards Board review.

54. The Plaintiff continues to suffer from clinically significant anxiety, panic attacks and depression caused by the retaliatory acts of the Defendant.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff seeks the following relief:

Declaratory judgment that the Defendant has violated Title VII as set forth above.

Entry of an order requiring the Defendant to rightfully and retroactively reinstate the Plaintiff to her employment with the Agency.

An award of back pay, front pay and all other out-of pocket expenses (including reimbursement for medical expenses) incurred as a result of the Defendant's illegal conduct.

An order requiring retroactive and current reinstatement of medical coverage and benefits.

11

Case 2:10-cv-00007-RTR    Filed 01/06/10    Page 11 of 13    Document 1

An award of compensatory damages in an amount not less than $300,000.00.

Entry of Preliminary and Permanent Injunctive relief barring future discriminatory conduct towards the Plaintiff.

Entry of an order requiring Defendant to cease all surveillance of Plaintiff.

Entry of Injunctive relief generally barring unlawful retaliation and other unlawful employment conduct in violation of Title VII.

Award plaintiff her reasonable attorneys' fees and costs.

Award any other remedy the Court deems just and equitable under the circumstances

Dated at Milwaukee, Wisconsin, this ____ day of January 2010.

Peter Earle
SBN 1012176
Law Office of Peter Earle, LLC
839 North Jefferson Street
Suite 300
Milwaukee, WI 53202

(414) 276-1076

12

## VERIFICATION

I, Martha Menchaca, M.D., Ph.D., declare under penalty of perjury that I have read the foregoing Verified Complaint and the allegations contained therein. The allegations contained therein are true to the best of my personal knowledge and belief, except as to those allegations which are made upon information and belief. As to the allegations made upon information and belief, I believe those to be true based upon written documents, declarations of witnesses, and other material evidence contained in the record of the underlying administrative proceedings before the Equal Employment Opportunity Commission and Office of Resolution Management of the Department of Veterans Affairs.

I further declare that on January 6, 2010, I have provided a copy of the Verified Complaint, the Motion for a Temporary Restraining Order, and Memorandum of Law in Support of Motion for Temporary Restraining Order and Preliminary Injunction to a review panel appointed by Michael D. Erdman, M.D., the Chief of Staff of the Zablocki Medical Center of the Veterans Administration to review the revocation of my clinical privileges, said review panel, allegedly being convened pursuant to VHA Handbook 1100.19, Credentialing and Privileging, and the Clement J. Zablocki VA Medical Center Medical Staff Bylaws.

Dated at Milwaukee, Wisconsin, this 6th day of January 2010.

_____
Martha Menchaca, M.D., Ph.D.